## Rogers v. Streiner

*Kenneth M. McLure*, for plaintiff.

*Donald E. Williams*, for defendant.

POWERS, J., June 24, 1957.—This is a contest between two neighbors relative to the use of a certain 10-foot driveway over the rear of defendant's property. Plaintiff's petition alleges that defendant is

guilty of contempt for failure to obey a court decree giving plaintiff an easement over this 10-foot driveway. Defendant's position is that she did not violate this court decree, that plaintiff's easement over this 10-foot driveway was not interfered with and that if it were obstructed, she was not responsible. Defendant further claims that plaintiff has forfeited her right to use this easement because of greatly increasing the burden upon it.

### Discussion

The easement over the driveway in question is used as a means of access from Cochran Alley to plaintiff's three properties situate at 205 and 209 North Mercer Street and 19 East Falls Street. Cochran Alley runs in substantially a northwardly-southwardly direction and the driveway in question runs eastward therefrom to the rear of plaintiff's three properties.

This driveway was the subject of prior litigation between plaintiff, defendant and her husband, who is now deceased. It concluded with a decree pro confesso which became final on April 13, 1949. Pertinent portions of this decree read:

"That the prayer contained in the Bill be, and it is hereby granted and that an injunction be, and it is hereby issued perpetually enjoining and restraining Elsie A. Streiner and George C. Streiner; husband and wife, their heirs and assigns, or any person for or on their behalf, from maintaining, replacing or permitting contrary to the will of Plaintiff, Mildred Rogers, or by any other means blockading, preventing, interfering or impeding the use of, and travel over and across by Plaintiff, her tenants, occupiers, agents, heirs or assigns, or any person visiting or having any business or social engagement or affairs with the persons aforesaid, by foot or by vehicle, to or from land owned by Plaintiff in the First Ward, and in Section 35 of the Official Survey, of the City of New Castle; Lawrence

County, Pennsylvania, to-wit: (Description of plaintiff's three (3) properties omitted) over a certain driveway, or right of way, ten (10) feet in width extending from Cochran Alley in said Ward immediately South of the boundary line between land of Frank B. Offutt and the respective land of Plaintiff and Defendants, Eastward to said land of Plaintiff, the land of Defendants, in said Ward and Section, being described as follows, to-wit: (Description of defendant's property omitted)."

Plaintiff is claiming that defendant is guilty of contempt because of interference with the use of the easement by those persons entitled to use it by this decree. The interference claimed by plaintiff is of two types: (1) That those entitled to use the easement were refused permission to use it by defendant: (2) that defendant excavated the driveway in such a manner that it was impossible to use the easement with an automobile and impractical to walk across it.

The present difficulties concerning the use of the easement across defendant's driveway began in August of 1955. At this time a man named Tex became a roomer in defendant's house. Shortly thereafter he erected two signs reading "Keep Dogs Out, No Trespassing" upon the south line and upon the driveway in question. Plaintiff removed these signs from the driveway on or about December 15, 1955, and placed them upon defendant's back porch while she was vacationing out of the city. Tex thereupon placed the same or similar signs in the center of the driveway during the latter part of February 1956. These signs mysteriously disappeared the following July, shortly after this court action was commenced.

Plaintiff had rented a space in her double garage at the rear of 209 North Mercer Street to one of her tenants, Mary Scherger Whetmore, but by reason of the signs placed in the center of the driveway, Whetmore

had no access to her garage space and thereupon quit paying rent to plaintiff about the end of August 1955.

Miller R. Kerr and Albert G. Nocera used the driveway for the purpose of making deliveries to plaintiff or her tenants. Both were accosted by Tex in September of 1955. Tex asked Kerr, a milkman, if he couldn't read the signs posted there and ranted and raved, calling Kerr a big Polack. Nocera, a dry cleaner, was stopped by Tex who said to him, "This is private property and you can't use that driveway, you can't walk through there". Both ceased using the driveway thereafter.

Tex precluded Fred Goodwin, a drug salesman, from driving over the driveway with his automobile for the purpose of delivering drug supplies to plaintiff. He said to Goodwin, "If you don't move your car you're going to get yourself into trouble". He jumped in front of the automobile being driven by Ella Jane Smith, one of plaintiff's employes, and said, "You cannot go out this driveway". He also hopped in front of a car being driven upon the driveway by Betty Allen, another of plaintiff's employes. James D. Barnett and Robert A. Myers, both of whom are undertakers, were accosted by Tex about the use of the driveway which they occasionally used for the purpose of going to plaintiff's office. Tex made it definitely clear to both that they were not to use the driveway.

It is clear that defendant knew of Tex's actions and approved them. When Tex hopped in front of Smith's automobile, defendant came out on the back porch of her house, pointed her finger at Smith and said, "I am going to have you arrested". When he stopped Allen, defendant was sitting on her back porch shrieking at Allen about trespassing and saying that no one was allowed to use the driveway.

Defendant herself refused permission for use of the driveway to John Hutchison who used it occasionally

to take groceries to his grandmother, a tenant of plaintiff at 19 East Falls Street. It was in November of 1955, when defendant yelled at Hutchison and asked him if he couldn't read the signs. She also stopped Harry L. Gormley from walking through the driveway on his way to plaintiff's office. She told Gormley that the driveway was private property, that he was trespassing and he couldn't go through it. Robert A. Myers heard her tell two or three persons that they could not use the driveway.

About February or March of 1956, Tex, using a pick and shovel, removed dirt from the driveway, excavating that portion of it upon defendant's lot to a depth of approximately one foot. Sometime thereafter he filled in the driveway so that his original excavation was reduced to a depth of approximately six inches. This excavation and fill left the surface of the driveway uneven and soft. By reason of the present six-inch excavation pools of water collect on the surface of the driveway causing it to become a mass of soft, gooey mud which remains for days after a rain. By reason of this muddy condition as well as the depth of the existing excavation, the driveway is not reasonably usable for vehicular or foot traffic.

The driveway, prior to the excavation, was composed of a hard cinder surface with a slight crown in the middle. Vehicular traffic upon the driveway had left two wheel tracks. Although the crown of the driveway was even with Cochran Alley, the wheel tracks were depressed about two inches below the level of this alley.

Was Tex acting as the servant of defendant when he stopped others from using the driveway and when he excavated dirt from it? If so, defendant is legally responsible for all of Tex's acts relating to the interference with plaintiff's use of her easement. The sole test to determine the existence of a master-servant relationship for the purpose of making the former re-

sponsible for the acts of the latter is the power or right of control at the time and place of the servant's conduct for which the master is sought to be held responsible: McGrath v. Budd Manufacturing Company, 348 Pa. 619. Defendant owned the property and as the owner undoubtedly had the right to control the actions of all persons upon it. If she disapproved of their actions in any respect, she had a legal right to declare them trespassers and eject them.

Further it is apparent that defendant approved and ratified Tex's actions of placing signs along and upon the driveway, of excavating it, and of stopping persons from using it even though they were legally entitled to do so. She was sitting on her back porch when the signs were erected along the driveway, and although these signs remained up for months at a time, there is no evidence that she took any action to remove them. On several occasions she even joined with Tex for the purpose of precluding the use of the driveway, and there exists not a scintilla of evidence that she ever remonstrated to Tex about his conduct denying use of the driveway. We must therefore conclude that Tex acted as defendant's servant not only in stopping persons from using the driveway, but also in excavating it.

It is of particular significance that Tex was present in the courtroom on the first day of the hearing when plaintiff's evidence was presented, but absent for some unexplained reason when defendant had an opportunity to produce testimony in her own behalf. His testimony was material to defendant's case and the burden of producing it rested upon her. Accordingly, our conclusion that Tex was acting as the servant of defendant is strengthened considerably by the principle that when a witness who has knowledge of particular facts relating to the happening of an event is not produced, the inference arises that he would have testified unfavorably against the party whose respon-

sibility it was to produce him: Haas v. Kasnot, 371 Pa. 580; Wills v. Hardcastle, 19 Pa. Superior Ct. 525.

The defense that plaintiff forfeited her right to use the easement across the driveway by reason of materially increasing the burden thereon is untenable. The decree hereinbefore set out permits all uses which plaintiff made of the easement. It was not appealed and the evidence shows no substantial change in the use of the easement since the day it became final.

We are of the further opinion that plaintiff's present use of the easement would have been permissible even if the decree were not entered. Generally speaking, an easement may be used only for such purposes as can be said to have been within the contemplation of the parties at the time of making the grant, taking changing conditions into consideration. Mr. Justice von Moschzisker, speaking for our Supreme Court in Seidler v. Waln, 266 Pa. 361, said:

" '. . . no unlawful additional burden is imposed on the lands of a servient estate by an increased number of persons using an unlimited right-of-way to which the land is subject; and so, if such a right is granted to a person who afterwards erects tenement houses on his land, the way may be used by his tenants.': 9 R. C. L. 791, section 47."

In Strycker v. Richardson, 77 Pa. Superior Ct. 252, our Superior Court held that a right-of-way for teams and wagons created before the event of an automobile may be used for automobiles. Bowers v. Myers, 237 Pa. 533, stands for the proposition that a right-of-way without limitation may be used for passage of vehicles as well as foot traffic. These cases lead to the inevitable conclusion that plaintiff's use of the easement was not unreasonable.

If defendant thought that the burden upon the easement was materially increased, she should have fol-

lowed the legal principle pronounced by Judge Henderson in Citizens' Electric Company v. Davis, 44 Pa. Superior Ct. 138, at page 145, when he stated:

"It is not an answer to the plaintiff's claim to say that it has used or proposes to use the way in a manner different from that allowed by the deed. The defendant cannot justify an obstruction of the way on any such ground. The remedy for an unauthorized use is by action. There is no pretense that the way has been surrendered by grant or extinguished by adverse possession, nor has any other available defense been introduced sufficient to defeat the plaintiff's claim."

### Conclusions of Law

1. Tex acted as the servant of defendant when he stopped persons from using the easement who were legally entitled to use it.

2. Tex was acting as the servant of defendant when he excavated that portion of the driveway upon defendant's property to a depth of one foot.

3. Tex was acting as the servant of defendant when he partially filled in the excavation.

4. Tex was acting as the servant of defendant when he placed the signs reading "Keep Dogs Out, No Trespassing" along the south line of the driveway and in the center thereof.

5. At no time was Tex ever a trespasser upon defendant's property at 17 East Falls Street.

6. Defendant is legally responsible for all acts performed by Tex as her servant.

7. Defendant was guilty of contempt for having disobeyed the decree of this court when she erected, or caused to have erected on her behalf through her servant, obstructions in the driveway in question and also when in person, or by persons acting for her, she verbally interfered with the use of the driveway by persons lawfully entitled to use it under plaintiff.

8. That defendant was guilty of contempt when she obstructed and further interfered with plaintiff's lawful use of the driveway by having a person acting on her behalf remove materials from the driveway which removal substantially interfered with the reasonable use thereof by persons lawfully seeking its use under plaintiff.

9. That plaintiff and persons lawfully using the driveway with her permission have not excessively used the driveway, the easement in her favor.

*Decree Nisi*

Now, to wit, June 24, 1957, the foregoing matter having been heard by the court on petition for enforcement of the former decree of court entered herein on April 2, 1949, which decree is hereby reaffirmed, the court does hereby order, adjudge and decree that defendant, Elsie A. Streiner, shall cause the surface of the said easement, a private driveway, to be returned to its former condition previous to the acts of interference by her so that the surface shall be packed firmly with a suitable material to form a surface on which motor vehicles may be driven thereon and that the said surface with a width uniform for its entire width shall be made, after being firmly packed, level with the paved portion of the public alley at its westernmost end and level with the end of the driveway of plaintiff, Dr. Mildred Rogers, at the boundary line between the properties owned by defendant and plaintiff and that the said easement, the private driveway, shall be level between the two said terminal points.

That the said defendant and all other persons acting for or on her behalf, shall cease and desist henceforth from attempting verbally to interfere with the lawful exercise of said right-of-way, particularly to warn said persons not to use the same, the persons as defined in the said decree previously entered herein, namely: Plaintiff, her tenants, occupiers of her houses described

in said previous decree, agents, heirs or assigns, or any person or persons visiting, being there for any lawful purpose or having any business or social engagement or affair with the persons aforesaid, by foot or vehicle.

The said Elsie A. Streiner, defendant, shall not henceforth erect, cause to be erected or permit to remain any obstructions on said driveway which shall interfere with the use of said driveway by plaintiff or said persons defined previously in this decree, and she shall not erect directly or indirectly through another person any signs on the remainder of her property adjoining the said easement or so close to it so that the persons who may lawfully have occasion to use the said driveway shall interpret the signs to mean that they are forbidden to do so or that they are trespassing thereon.

It is further hereby ordered and decreed that if defendant refuses or neglects to conform to the commands of this decree for a period of 30 days after it becomes final, that she shall be guilty of contempt and be committed to the county jail until such time as she obeys the commands of this decree and thereby purges herself of contempt.

It is further hereby ordered and decreed that the record costs in these proceedings both previously taxed and subsequently incurred herein to and including this date together with any future costs incurred in the enforcement of this decree under the order of this court be, and they are hereby entered as a judgment in personam against the said defendant, Elsie A. Streiner, the prothonotary to enter the same in the judgment docket and index in and for this county. The said costs shall be paid by the said defendant.

This decree shall become final and absolute unless exceptions are taken within 20 days from the date hereof.